

JLG:CPK
F. #2022R00347

*610 Federal Plaza*
*Central Islip, New York 11722*

February 26, 2026

By ECF
Honorable Nusrat J. Choudhury
United States District Court Judge
United States District Court
Eastern District of New York
1040 Federal Plaza
Central Islip, New York 11722

> Re:    United States v. Carmine G. Agnello
>        Criminal Docket No. 24-366(S-1) (NJC)

Dear Judge Choudhury:

The government submits this letter regarding the sentencing of defendant Carmine G. Agnello ("Defendant") which is scheduled for March 13, 2026. On September 26, 2024, Defendant pled guilty before this Court to a single count Information which charged wire fraud, pursuant to 18 U.S.C. § 1343. At his plea, Defendant admitted to defrauding the United States Small Business Administration ("SBA") and several financial institutions administering the COVID Economic Injury Disaster Loan Program ("EIDL") of nine hundred and forty-three thousand and three hundred dollars ($943,300). The Presentence Investigation Report ("PSR") states that the maximum term of imprisonment is thirty years and the Guidelines calculation yields a total offense level of 20 and a Guidelines imprisonment range of 33-41 months. PSR at ¶¶ 58-59. The plea agreement contains the same guidelines calculation. Therefore, the government respectfully requests that the Court adopt the Guidelines calculations in the PSR, which mirrors the Guidelines calculation in the plea agreement, and impose a sentence within the PSR Guidelines of 33-41 months imprisonment, coupled with $1,259,286 in restitution[1] and a special assessment of $100.

---

[1] The restitution is a total of $943,300, the amount reflected in the plea agreement as restitution, plus $140,000 that was paid by SBA to defendant plus the applicable interest as stated in the plea agreement (Paragraph 1e). The government has a pending PSR objection to PSR para. 5 which states that the amount of loss is $943,300. However, that amount reflects a loan payment of $140,000 but, because that payment was then paid by SBA to defendant at defendant's request, the loss/restitution amount is increased by $140,000 to $1,083,300. With interest, as shown on Exhibit A, the total is $1,259,286. The second prong of the government's objection to PSR para. 5 is that the statement that defendant paid over $200,000 on the loan before this investigation surfaced is not correct. The two payments

I.    Investigation and Factual Background

This prosecution concerns Covid Aid Fraud.  Defendant applied for, and received, EIDL funds of $1.1 million dollars for Crown Auto Parts & Recycling, LLC ("Crown Auto Parts"). PSR at ¶ 5.  The Defendant submitted three materially false and fraudulent online applications for these EIDL loans on behalf of Crown Auto Parts.  Id.  Those applications contained false and fraudulent statements about the number of employees, the intended use of the loan proceeds, and that the Defendant did not have a criminal record, although he did.  Id.  Defendant used the funds to enrich himself, including investing $420,000 in a cryptocurrency business.  PSR at ¶¶ 5-7.

In his Covid Aid-EIDL applications, defendant falsely claimed that the corporation had substantial payrolls and significant operations.  Crown Auto Parts operated as a general automobile repair shop with Defendant co-owning the business with his brothers but stopping due to the instant arrest.  PSR at ¶ 48.  Defendant was unable to recall the business's earnings, but the PSR indicates that Crown Auto Parts earned a gross monthly income of twelve thousand and five hundred dollars ($12,500) with no further information available regarding assets, liens, or judgments.  Id.

II.    A Guidelines Sentence is Appropriate

As set forth below, analysis of the sentencing considerations set forth by Congress in 18 U.S.C. § 3553(a) requires a guidelines sentence.  Although the Supreme Court has recognized that the Guidelines system is merely advisory, there must still be a strong connection between a sentencing court's imposition of a sentence and a defendant's real criminal conduct.  United States v. Booker, 543 U.S. 220, 246 (2005).  Whether above or below the Guidelines range, sentencing courts have a "very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008).  Given the nature of the crime and the context in which Defendant committed it, a guidelines sentence is appropriate.  Defendant defrauded a federal disaster aid program multiple times over the course of a year during a national emergency to obtain over one million dollars.  The Defendant utilized these fraudulently obtained funds for personal enrichment and abused the EIDL program, resulting in a $1,083,000 loss for the SBA with restitution due of over $1.25 million.

a.    Defendant's Family Circumstances do not Warrant the Imposition of a Below Guidelines Sentence Under 18 U.S.C. § 3553(a)(1)

A key issue in this sentencing is whether defendant's potential donation of a kidney to a relative should warrant a below guidelines sentence.  As set forth below, the answer is no.  If the defendant becomes the donor and an imminent date is set for the operation, a delay in defendant's surrender date may be appropriate. However, being a kidney donor does not, as set forth below, constitute extraordinary family circumstances and warrant a below guidelines sentence.  Such circumstances may, of course, be considered by sentencing courts when weighing

---

constituting that amount, $140,000 and $63,000, were paid after the investigation had surfaced with a subpoena on defendant's company and a response from defendant's attorney. See Exhibit B.

the sentencing factors enumerated in 18 U.S.C. § 3553(a) as part of the two-step process enumerated in the United States Sentencing Commission's Guidelines Manual. Defendant relies on caselaw from this and other Circuit Courts to urge this Court to impose a non-custodial sentence, but the facts of these cases are distinguishable from Defendant's case as they are caregiver cases.

First, Defendant argues that extraordinary family circumstances alone can justify a downward departure when a defendant bears the sole responsibility for the survival of dependents, relying on United States v. Johnson, 964 F.2d 124, 129 (2d Cir. 1992). In Johnson, the extraordinary family circumstances that warranted a downward departure from the Sentencing Guidelines were the defendant being "solely responsible for the upbringing of her three young children, including an infant, and of the young child of her institutionalized daughter." Id. Clearly, imprisoning a single parent responsible for raising multiple young children would wreak havoc on these children, thus warranting a downward departure. Id. Here, defendant has no caregiver responsibilities.

Defendant also relies on a variety of other sole caregiver cases, specifically Circuit Court decisions justifying downward departures based on extraordinary family circumstances. See United States v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991) (affirming a downward departure where the defendant was a single parent of an infant and the sole support for herself and her child); United States v. Prosperi, 686 F.3d 32, 48-49 (1st Cir. 2012) (affirming a downward variance for a defendant caring for a wife battling terminal cancer and his disabled daughter); United States v. Muñoz-Nava, 524 F.3d 1137, 1141-42 (10th Cir. 2008) (affirming a downward variance where the defendant was a single father caring for his eight-year-old son and his elderly parents who had serious medical problems). Notably, these cases involve circumstances where the defendant is the sole caregiver of a child or infant or a dying spouse. No such facts are present here. PSR ¶ 31. Prosperi, 686 F. 3d at 48-49; Muñoz-Nava, 524 F.3d at 1141-42. In fact, Defendant has two adult brothers who live with, or nearby, their ill relative. PSR ¶ 31-32.

The law is clear that where a defendant is not the only individual capable of caring for a dependent, a downward departure is improper. See United States v. Zadora, 93 F. App'x. 305, 307 (2d Cir. 2004) (vacating a district court's sentence where the defendant's family circumstances of caring for her 86-year-old mother presented no exceptional hardship due to other family members being capable of caring for her). See also United States v. Madrigal, 331 F.3d 258, 260 (2d Cir. 2003) (reversing a district court's downward departure where the defendant was not "the only person capable of providing adequate care for" her children).

Additionally, courts in this Circuit have held that defendants awaiting kidney transplantations may still be incarcerated in BOP facilities. That is, prospective recipients of organs, not prospective donors, which is what defendant is here. See United States v. Goode, 2020 WL 58272, at *4-5 (S.D.N.Y. Jan. 6, 2020)(kidney transplant never happened and defendant, a prospective recipient of a kidney, receives dialysis in prison); United States v. Davis, 2025 WL 271645, at *5-6 (W.D.N.Y. Jan. 23, 2025). In Goode, in denying a defendant's motion for compassionate release, the district court recognized that the sentencing court sentenced the defendant to a term of imprisonment with an extended surrender date to account for the defendant's need for a kidney transplant. Goode, 2020 WL 58272, at *5-6. The sentencing court also described how BOP's medical facilities are capable of dealing with any post-transplant surgery issues that

may arise.  Id. at *5.  In Davis, the defendant noted at sentencing that a medical professional recommended that she receive a kidney transplantation and expressed concerns that incarceration would prevent her from finding a donor.  Davis, 2025 WL 271645, at *1.  Nonetheless, the sentencing court imposed a sentence within the Guidelines range, and the district court denied a motion for compassionate release, explaining that the defendant received adequate and standard medical care from the BOP while incarcerated.  Id. at *5.  Thus, should this surgery be scheduled, this Court, like other courts in this Circuit, could grant a term of imprisonment for Defendant with a longer surrender date, like that in Goode, until Defendant has been cleared by the transplant surgeon.

Defendant construes the circumstances of his relative's need for kidney transplantation as an extraordinary family circumstance warranting a non-custodial sentence under 18 U.S.C. § 3553(a)(1).  While certainly an unusual circumstance, it is not, based on the caselaw, a basis to impose a below guidelines sentence.  Defendant has two brothers, both living on Long Island, and one of whom currently resides with Defendant and their mother.  PSR at ¶¶ 31-32. Moreover, should the surgery be scheduled for a near term date, BOP has assured the government that Defendant's post-transplant medical needs can be handled once the transplant surgeon has cleared him. Thus, granting a non-custodial sentence where one is unnecessary would allow Defendant to escape an appropriate prison sentence and frustrate the other sentencing factors to be considered in 18 U.S.C. § 3553(a).

   b.  The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))

Section 3553(a) requires the Court to consider the "nature and circumstances of the offense" and to impose a sentence that "reflect[s] the seriousness of the offense.  18 U.S.C. §§ 3553(a)(1) and (a)(2)(A).  Three components indicate the seriousness of defendant's crime, namely theft of Covid Aid during a national disaster, the crime took a long period of time and involved multiple misrepresentations on multiple Covid loan applications.

First, the object of the defendant's crimes, government aid, during a national disaster, warrants a substantial sentence for looting the disaster aid programs.  The defendant personally conducted a massive Covid fraud on the United States.  In doing so, he falsified many documents, defrauded the United States and obtained over a million dollars.  Second, this was not an isolated event as the crime occurred for over a year and entailed multiple false statements and misrepresentations by the defendant using his business to secure fraudulent loans.

The United States Court of Appeals for the Second Circuit has recently recognized the serious nature of defrauding Covid-19 relief programs, affirming an above-Guidelines sentence due to the severity of such crimes.  United States v. DiMassa, 117 F.4th 477, 482-83 (2d Cir. 2024) (sentencing the defendant to a 96 month sentence falling well above the Guidelines' 33-41 month range for stealing over $400,000 of city COVID-19 relief funds meant for COVID-19 equipment and services).  In DiMassa, the Court recognized the "underscored impact of COVID-19 on the country, and the severity of stealing relief funds" and the defendant deriving "significant financial gains from [his] crimes" to justify imposing an above-Guidelines sentence.  Id.

Similarly, here, Defendant defrauded a government agency of COVID-19 relief funds "designed to provide long-term, low-interest loans for small businesses affected by various natural and economic disasters."  PSR at ¶ 4.  Although the nature of the fraud in DiMassa was

4

arguably more severe because it involved someone tasked with distributing funds for city needs, the theft of Covid Aid clearly drove the Court's affirmance of an above-Guidelines sentence which referred to it as monies that "people in the midst of a pandemic desperately needed." Id. at 483. DiMassa, 117 F.4th at 482-83. Thus, a sentence commensurate with the 33-41 month Guidelines range here would recognize the severe and serious nature of Defendant's offense.

The court in Trapp also recognized the seriousness of "fraudulently diverting relief funds from the United States which could have gone to struggling small businesses during the Covid-19 pandemic." United States v. Trapp, 2022 WL 5246420, at *5-6 (E.D.N.Y. Oct. 5, 2022) (sentencing defendant at the top of the appropriate Guidelines range of eighteen months of incarceration for, among other things, wire fraud under 18 U.S.C. § 1343 after defrauding the SBA and EIDL of $52,400 and damaging a police vehicle). See also United States v. Ayers, 2025 WL 2925096, at *3-4 (S.D.N.Y. Oct 15, 2025) (recognizing that wire fraud that "resulted in actual losses exceeding $1.69 million to the U.S. Small Business Administration, funds intended to assist small businesses struggling during the COVID-19 crisis," remained a substantial and serious offense in considering sentence reduction and 43 month sentence was appropriate); United States v. Williams, 2024 WL 4028311, *2, *4 (E.D.N.Y Sept. 3, 2024) (denying a sentence reduction for a defendant who submitted three fraudulent loan applications to the SBA which misrepresented "the number of employees" and "the intended use of the loan proceeds" receiving 18 months sentence for fraud of $281,000).

Defendant defrauded the SBA of over one million dollars, which resulted in a loss of $1,083,300, and, with the fraudulently obtained EIDL funds, Defendant funded a lavish lifestyle for himself, including the investment of over $400,000 in a cryptocurrency business. PSR at ¶ 5. This is significantly higher than the amount defrauded from the SBA in Trapp, where the court imposed a sentence of 18 months for far less fraud and harming a police vehicle. Trapp, 2022 WL 5246420, at *5-6. Therefore, Defendant, who similarly defrauded the SBA and EIDL, should face a guideline sentence punishment for his crime.

c. The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Next, Section 3553(a)(1) also states that the Court must consider the "history and characteristics of the defendant" in imposing a sentence. 18 U.S.C. § 3553(a)(1). This factor similarly weighs in favor of a guidelines sentence. First, defendant has a criminal history and lied about that in his Covid loan application. On January 22, 2009 "[D]efendant was found in possession of a gravity knife while traveling as a passenger in a vehicle" and convicted of Disorderly Conduct. PSR at ¶ 5, 23. On November 28, 2018, Defendant was convicted of misdemeanor operation of an unregistered salvage pool. PSR at ¶ 24. His criminal history was computed into the Guidelines sentencing range. PSR at ¶¶ 25-26. Since being arrested, Defendant has developed health issues and participates in monthly telemedicine sessions. PSR at ¶ 41. Defendant is prescribed medication, as needed for sleep and to assist with his attention issues. Id. In addition, while on bail, defendant has engaged in improper financial transactions, including writing checks against his own closed business accounts.

Defendant reported having a good, upper income childhood in which he and his brothers were mostly raised by his mother after his parents divorced. PSR at ¶ 31-32. Defendant lives with his mother and younger brother; his other brother still resides on Long Island. PSR at ¶ 31. Defendant graduated high school but dropped out of college. PSR at ¶ 44. Defendant owns

and operates Partslion.com LLC, an online seller of automobile parts that earns $250,000 per year, from which he personally earns $150,000 per year. PSR at ¶ 47. He also co-owned several junkyards with his brothers throughout the years, including Crown Auto Parts most recently. PSR at ¶ 48.

Defendant's personal history is similar to that of the defendant's in United States v. Trapp. United States v. Trapp, 2022 WL 5246420, at *2-3 (E.D.N.Y. Oct. 5, 2022). There, the defendant described having a "good" childhood, although less economically stable than that of Defendant's here. Id. at *2. The defendant in Trapp only completed high school, and he had a variety of jobs over the years, though he was unemployed at the time of his presentence investigation. Id. at *2-3. Like Defendant here, the defendant in Trapp suffered from various medical issues, though remained physically healthy, and had no history of substance abuse. Id. at *3. Unlike Defendant here, the defendant in Trapp had no prior criminal convictions. Id. The court in Trapp, weighing these circumstances as part of the analysis of 18 U.S.C. § 3553(a)(1), sentenced the defendant to eighteen months of incarceration. Id. at *7. Despite his positive upbringing and current successful means of employment, Defendant defrauded the SBA and EIDL for his own personal gain.

### d. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

The Court must also consider the "need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense." 18 U.S.C. § 3553 (a)(2)(A). Defendant profited from a national emergency, COVID 19, and a key support program established to address it, the EIDL. Although Courts have criticized the Sentencing Guidelines for imposing mechanical loss calculations that lead to irrational and unreasonable sentences, those were not Covid fraud cases and involved far higher guideline levels. See United States v. Adelson, 441 F. Supp. 2d 506, 509 (S.D.N.Y. 2006)(joined a fraud late and was acquitted of seven counts); United States v. Parris, 573 F. Supp. 2d 744, 745 (E.D.N.Y 2008). Defendant cites Adelson and Parris in an attempt to justify this Court to impose a non-custodial, probation sentence due to both of those cases imposing a significant downward variance in sentencing the defendants for financial crimes. See Adelson, 441 F. Supp. 2d at 509; Parris, 573 F. Supp. 2d at 745. In both of those cases, however, the defendants were still sentenced to a term of imprisonment or incarceration. Adelson, 441 F. Supp. 2d at 509; Parris, 573 F. Supp. 2d at 745.

Defendant still committed a serious financial crime by defrauding the SBA of EIDL funds during a national emergency. The court in Davis recognized that the defendant's offenses, including wire fraud under 18 U.S.C. § 1343, were substantial in that she defrauded the SBA, EIDL, and multiple victims of natural disasters for her own personal gain for $285,430(64 months for Covid fraud count where defendant was an employee of SBA but had kidney disease receiving kidney dialysis 3 days a week). United States v. Davis, 2025 WL 271645, at *6 (W.D.N.Y. Jan. 23, 2025). Likewise, the court in Trapp recognized that defrauding the SBA and EIDL of relief funds intended for struggling small businesses during the Covid-19 pandemic was a serious offense. United States v. Trapp, 2022 WL 5246420, at *5 (E.D.N.Y. Oct. 5, 2022). The court also recognized that a sentence of incarceration would justly punish him for the defendant's offense of wire fraud against the SBA and EIDL. Id.

Here, a Guidelines sentence for Defendant will promote respect for the law and provide just punishment. As set forth above, this is a serious case where the defendant defrauded a United States national disaster aid program many times to obtain over one million dollars.

e. The Need to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Future Crimes of the Defendant (18 U.S.C. §§ 3553(a)(2)(B), (C))

Sections 3553(a)(2)(B) and (a)(2)(C) further require the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B), (C). These factors weigh heavily in favor of a Guidelines sentence. Deterrence has two components: general and specific. Both factors point to the need for the imposition of a guideline sentence here.

Regarding general deterrence, it is important for future programs set up in response to national disasters that individuals know that looting disaster aid programs will be treated as a serious crime. Defendant noted that the EIDL program was deliberately designed for rapid processing with minimal oversight to prevent economic collapse. There is a strong interest in deterring abuse of such programs, given the circumstances in which such programs may arise, like a global pandemic, and the ease with which loans can be acquired. The defendant in United States v. Smith similarly argued that, because the EIDL program were quickly implemented with its rules occasionally changing, he could not be faulted for the fraud; the court there disagreed. United States v. Smith, 2024 WL 4545904, at *3-4 (Aug. 29, 2024). While not addressing deterrence specifically, the result arguably goes to the idea that the ease with which such emergency relief programs can be defrauded necessitates adequate deterrence of such criminal conduct.

More specifically, Defendant engaged in a serious "offense, which involved fraudulently diverting relief funds from the United States which could have gone to struggling small businesses during the Covid-19 pandemic." United States v. Trapp, 2022 WL 5246420, at *5 (E.D.N.Y Oct. 5, 2022). The court in Trapp held that the imposed sentence, commensurate with the Guidelines, would "deter others from engaging in similar acts" and reflected a just punishment for the defendant's offense. Id. Allowing a downward variance would invite future defrauding against national emergency relief programs overseen by the SBA and other federal agencies. Thus, there is a substantial need for general deterrence for others who may attempt to defraud the SBA and other future federal loan programs for substantial financial gain.

Regarding specific deterrence, Defendant contends that his addiction to investing in cryptocurrency caused him to defraud the SBA and EIDL. PSR at ¶ 42. That excuse is belied by his actions on bail. Indeed, given his improper financial transactions while on bail in this case, it appears that specific deterrence is necessary.

f. The Need Provide the Defendant with Effective Medical Treatment (18 U.S.C. §§ 3553(a)(2)(D))

Section 3553(a)(2)(D) require that the Court consider "the need for the sentence imposed to provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

BOP officials have reviewed Defendant's medical concerns and advised the government that, while amphetamines and benzodiazepines are controlled substances not ordinarily permitted in prison, Defendant will likely be offered alternative sleep aids to benzodiazepines. Additionally, BOP officials advised me that prescribed amphetamines for ADHD are not ordinarily clinically indicated in a prison setting and are, in fact, contraindicated for someone with only one kidney, a characteristic which, should the surgery actually take place, Defendant will soon possess.

Furthermore, BOP officials have advised me that, if the surgery does take place, BOP could accept Defendant once he is cleared by the surgeon who removes his kidney. Defendant would be treated in accordance with BOP's Patient Care Policy, because the procedure would have been completed in the community prior to incarceration, but BOP has had inmates donate organs while incarcerated. Therefore, a non-custodial sentence would be unnecessary. Given that Defendant will receive adequate medical care while in BOP custody and the other sentencing factors, a non-custodial sentence would be unnecessary and unwarranted. Planning to donate does not preclude BOP custody without a delay in surrender date as there have been inmates donate while incarcerated.

Defendant's concerns about the adequacy of treatment in BOP facilities should not outweigh the seriousness of his offense and the need to punish him. Defendant argues that his status after kidney transplantation qualifies as an extraordinary physical impairment under the now deleted United States Sentencing Guidelines § 5H1.4. Defendant first relies on United States v. Martinez-Guerrero, to support the notion that district courts can consider "potential for victimization" and "extreme vulnerability" in determining what constitutes an extraordinary physical impairment. United States v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993). Defendant further relies on United States v. Lara, which upheld a downward departure based on the defendant's "particular vulnerability due to his immature appearance, sexual orientation and fragility." United States v. Lara, 905 F.2d 599, 603 (2d Cir. 1990). However, none of the cases cited by Defendant constitutes a kidney transplantation as an extraordinary physical impairment.

Furthermore, as mentioned earlier, courts in this Circuit have sentenced defendants with kidney problems or awaiting kidney transplants, potential recipients, to periods of incarceration. See United States v. Goode, 2020 WL 58272, at *4-5 (S.D.N.Y. Jan. 6, 2020); United States v. Davis, 2025 WL 271645, at *5-6 (W.D.N.Y. Jan. 23, 2025). Additionally, the defendant in Trapp, like Defendant here, suffered from several medical issues, including ADHD, received individual counseling and group counseling, and was prescribed medication to aid with sleep and depression. United States v. Trapp, 2022 WL 5246420, at *3 (E.D.N.Y. Oct. 5, 2022). The court still sentenced the defendant to incarceration for his wire fraud against the SBA and EIDL. Id. at *6.

III.     <u>Conclusion</u>

Accordingly, the United States requests that the defendant be given a Guidelines sentence within the 33 – 41 months imprisonment range together with $1,259,286 in restitution and a special assessment of $100.

Respectfully submitted,

JOSEPH NOCELLA JR.
United States Attorney

By:     <u>*/s/ Charles P. Kelly*</u>
Charles P. Kelly
Assistant U.S. Attorney
(631) 715-7866

cc:  Defense Counsel (via ECF)

---

The government thanks Brendan Walter, a second year law student at Hofstra Law School, for his valuable assistance in the preparation of this letter brief.